**E-Filed 8/30/2011**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| | |
|---|---|
| JOHN EMERSON,<br><br>  Plaintiff,<br><br>  v.<br><br>BANK OF AMERICA, N.A., a Delaware Corporation, BANK OF AMERICA GROUP BENEFITS PROGRAM, AETNA LIFE INSURANCE COMPANY, and DOES 1-20, inclusive.<br><br>  Defendants. | Case No. CV 10-04919 JF<br><br>ORDER[1] DENYING MOTION TO DISMISS SECOND AMENDED COMPLAINT AS TO DEFENDANTS AETNA LIFE INSURANCE COMPANY AND BANK OF AMERICA GROUP BENEFITS PROGRAM<br><br>[Re: Docket No. 34] |

Defendants Aetna Life Insurance Company ("Aetna") and Bank of America Group Benefits Program ("The Plan") move pursuant to Fed. R. Civ. Pro. 12(b)(6) to dismiss Plaintiff's Second Amended Complaint ("SAC"). The Court has considered the moving and responding papers and the oral arguments of counsel presented at the hearing on June 17, 2011. For the reasons discussed below, the motion will be denied.

---

[1] This disposition is not designated for publication in the official reports.

# I. BACKGROUND

Plaintiff John Emerson ("Emerson") filed this action against Bank of America, National Association ("BofA"), The Plan, and Aetna (collectively "Defendants") seeking redress for incidents that resulted in the cancellation of his health benefits and termination of his employment. The operative SAC contains eight claims against Defendants.

Emerson was a loan officer at Countrywide Financial ("Countrywide"). SAC ¶ 13. In early 2009, BofA purchased Countrywide, and at that time Emerson became an employee of BofA. SAC ¶ 14. On April 1, 2009, Emerson was offered health insurance benefits through The Plan. SAC ¶ 15. Aetna is the claims administrator for The Plan. SAC ¶ 10. Emerson enrolled in The Plan and began paying insurance premiums. *Id.*

In May 2009, Emerson took unpaid medical disability leave for a herniated cervical disc that required surgery. SAC ¶ 16. Dr. Jenny Multani performed the surgery on May 2, 2009. SAC ¶ 17. On July 21, 2009, Emerson started to experience severe pain in his lower back, an MRI revealed lumbar disc compression and a severely herniated lumbar disc at L4-L5. SAC ¶ 18. Dr. Multani sought insurance authorization for a second surgery and requested an extension of Emerson's disability leave, which was granted through December 2, 2009. SAC ¶ 19.

Emerson paid his insurance premiums while he was on disability leave. SAC ¶ 21. On August 4, 2009, BofA sent Emerson a letter that notified him that he had "paid in full and no further action [was] needed." SAC ¶ 21, Ex. A. On October 24, 2009, Emerson received an invoice claiming that he owed $249.26, of which $83.98 was for October and $166.17 was for November. SAC ¶ 22, Ex. B. On November 17, 2009, Emerson paid the October invoice with a check. SAC ¶ 23, Ex. C. On December 23, 2009, Emerson received an invoice, claiming that he owed $747.79, of which $83.10 was for September, $166.17 was for October, $166.17 was for November, $166.18 was for December, and $166.17 was for January 2010; the total reflected credit for Emerson's payment in November. SAC ¶ 24, Ex. D. On January 5, 2010, Emerson paid the outstanding invoice with a check in the amount of $400.00. SAC ¶ 25, Ex. E.

On January 11, 2010, BofA sent Emerson a confirmation statement that summarized his

2

benefits. SAC ¶ 26, Ex. F.  On February 8, 2010, Emerson received his next bill, which reflected zero balance.  SAC ¶ 27, Ex. G.  Because this invoice also stated a $483.07 credit, Emerson called BofA's Personnel Center ("Personnel Center") to determine the status of his insurance. SAC ¶ 29, Ex. G.  The person with whom he spoke informed him that his health insurance had been cancelled for nonpayment.  SAC ¶ 29.  Emerson was told that he could make a one-time request for reinstatement, which he did both over the phone and in writing.  *Id.*

On February 18, 2010, the Personnel Center emailed Emerson a confirmation of his request for reinstatement.  SAC ¶ 30, Ex. I.  A week later, Emerson called the Personnel Center to follow up on his request.  SAC ¶ 31.  He was informed that his health insurance was cancelled retroactively beginning August 31, 2009 for nonpayment for more than sixty days.  SAC ¶ 31.  In late February 2010, BofA mailed Emerson a check for $483.07.  SAC ¶ 34, Ex. L.  Emerson called the Personnel Center, and the telephone representative told him that the check was a refund of premium payments made after August 31, 2009.  On March 30, 2010, Emerson wrote a letter to BofA, explaining the situation and requesting a written statement of cancellation.  SAC ¶ 32, 35, Ex. J.  On March 29, 2010, BofA issued a certificate stating that Emerson's insurance coverage began on April 1, 2009 and ended on August 31, 2009.  SAC ¶ 36, Ex. M.  The certificate did not provide an explanation for the termination of benefits.  *Id.*

Defendants did not make a timely offer of COBRA benefits.  SAC ¶ 38.  Although Emerson followed all of Defendants' directions for seeking restatement, Defendants did not identify any facts reviewing or appealing the cancellation.  SAC ¶ 51.  On October 8, 2010, BofA terminated Emerson's employment.  SAC ¶ 52.  Emerson filed a complaint with the California Department of Fair Employment and Housing and received a right to sue letter.  SAC ¶ 53, Ex. Q.  Emerson also timely complied with the requirements of the United States Equal Employment Opportunity Commission.  SAC ¶ 54.

## II.  LEGAL STANDARD

A court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  Only where the complaint lacks a "cognizable legal theory or

3

sufficient facts to support a cognizable legal theory" is 12(b)(6) dismissal appropriate. *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). A complaint may be dismissed for failure to state a claim if a plaintiff fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). A claim has "facial plausibility" when enough facts are pled to allow a court to draw a reasonable inference that defendant is liable for the alleged misconduct. *Id.* at 556. Allegations of material fact must be taken as true and construed in the light most favorable to the nonmoving party. *Jenkins v. McKeithen*, 395 U.S. 411, 421, 89 S.Ct. 1843, 23 L.Ed.2d 404 (1969). But, a court need not accept as true conclusory allegations, unreasonable inferences, legal characterizations, or unwarranted deductions of fact. *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-755 (9th Cir. 1994).

A court must grant an opportunity to amend unless it is clear that the complaint cannot be cured. *Lucas v. Dep't of Corr.*, 66 F.3d 245, 248-49 (9th Cir. 1995). In determining whether to dismiss a complaint, a court considers "the presence or absence of undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party and futility of the proposed amendment." *Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 538 (9th Cir. 1989). When amendment would be futile, dismissal may be appropriate. *Dumas v. Kipp*, 90 F.3d 386, 389 (9th Cir. 1996).

### III. DISCUSSION

Emerson seeks declaratory relief and equitable estoppel pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"). SAC ¶ 92. He alleges that he was a beneficiary of The Plan because he enrolled in the Aetna Comprehensive Traditional Plan through BofA. SAC ¶ 95. The Plan is an employee welfare benefit plan under ERISA, and BofA funds The Plan. SAC ¶ 96. Aetna and BofA administer The Plan and are obliged to issue all notices, premium statements, invoices, and claim statements for Emerson's plan. SAC ¶ 98. As set forth above, Emerson alleges that on February 18, 2010, he called the Personnel Center and was informed orally for the first time that his medical benefits had been cancelled for non-

4

Case No. CV 10-04919 JF
ORDER DENYING MOTION TO DISMISS SECOND AMENDED COMPLAINT AS TO DEFENDANTS AETNA LIFE INSURANCE COMPANY AND BANK OF AMERICA GROUP BENEFITS PROGRAM
(JFEX2)

payment. SAC ¶ 105.  He asserts that he exhausted all required administrative remedies because he filed a request for reinstatement over the phone and in writing, and Defendants denied his claim.  SAC ¶ 106-108, 112, 117.  He also alleges that Defendants left him without medical benefits, unemployed, without a means to obtain COBRA coverage, and in a state of disability, physical pain, and emotional distress.  SAC ¶ 110, 115.  Emerson asks this Court to review Defendants' action *de novo* declaring that the cancellation was arbitrary and capricious, an abuse of discretion, and contrary to the terms of The Plan.  SAC ¶ 116-118.

**A.  Exhaustion Doctrine**

Aetna and The Plan argue that Emerson failed to exhaust The Plan's internal administrative remedies.  Mot. to Dismiss at 9.  Although ERISA does not require exhaustion of a plan's procedures, courts usually impose this exhaustion requirement prior to allowing to file a particular suit.  *Amato v. Bernard*, 618 F.2d 559, 566-67 (9th Cir. 1980).  Under the plan at issue here, a beneficiary typically makes a claim by filing a written claim with the claims administrator and filing an appeal to the claims administrator or the Claims Committee within 180 days after receiving notice of a denial of benefits.  Mot. to Dismiss at 9-10.  The Plan also requires that a claimant refrain from taking legal action until he or she has followed the claims procedure and exhausted the administrative remedies available.  Mot. to Dismiss at 10.  According to Aetna and The Plan, Emerson failed to exhaust his administrative remedies because he did not file a claim with Aetna and has not pled facts that would excuse exhaustion.

Emerson concludes that he was not required to do more than the steps detailed in the SAC.  He made a written request for explanation and review immediately after he was informed about the cancellation.  His letter to BofA on March 30, 2010 explained why he thought his benefits should not have been cancelled.  He made three separate requests for review: the February 18, 2010 phone call, the March 30, 2010 letter, and the April 16, 2010 letter.  SAC Ex. H-J.

Aetna and The Plan argue that Emerson's efforts cannot amount to exhaustion because BofA's Personnel Department is neither the plan administrator nor the claims administrator.

5

Beneficiaries have a duty to be informed about the details of their plans. *Jordan v. Fed. Exp. Corp.*, 116 F.3d 1005, 1016 (3rd Cir. 1997). Aetna and The Plan rely upon several out-of-circuit cases to support their position that Emerson's efforts to seek reinstatement were insufficient because he did avail himself of specific procedures in the plan.[2]

Aetna and The Plan also contend that Emerson was not entitled to rely upon the statements made by the telephone representatives at the Personnel Center because those statements contradicted the provisions of The Plan. A beneficiary may not allege an estoppel claim under ERISA where a plan employee makes statements to him that would "enlarge his rights against the plan beyond what he could recover under the unambiguous language of the plan itself." *Greany v. W. Farm Bureau Life Ins. Co.*, 973 F.2d 812, 822 (9th Cir. 1992). According to Defendants, it was unreasonable for Emerson to believe that he could file a claim for reinstatement directly with the Personnel Center. The Plan requires a claimant to file an initial claim with the claims administrator. Since Aetna is the claims administrator, Emerson could not

---

[2] In *Bourgeois v. Pension Plan for Employees of Santa Fe Intern. Corp.*, the Fifth Circuit held that "allowing informal attempts to substitute for the formal claims procedure would frustrate the primary purposes of the exhaustion requirement." 215 F.3d 475, 480 n.14. However, Bourgeois could not actually raise his argument on appeal because he failed to make it in the district court; this observation is not included in the holding. *Bourgeois* also is factually different because the plaintiff followed the information in a brochure, rather than the express plan, and the two documents were inconsistent. In the instant action, Emerson carefully followed the instructions he was given by the same telephone representative who had informed him his insurance was cancelled.
    In *Barnett v. IBM Corp.*, the court stated that "if an informal or unsubstantiated denial of a 'claim' that was never filed or formally presented is reviewable in the federal courts, then, in such situations, the courts and not ERISA trustees will be primarily responsible for deciding claims for benefits." 885 F. Supp. 581, 588 (S.D.N.Y. 1995). However, *Barnett* was denying futility, which is an exception to the exhaustion doctrine. In that case, the plaintiff did not apply for long-term disability benefits because the defendant told her that the application would be denied. The court did not excuse exhaustion because there was no actual showing of futility. Here, Emerson filed both written and oral claims.
    Aetna and The Plan also rely upon *Medical Alliances, LLC v. American Medical Security*, 144 F. Supp. 2d 979 (N.D. Ill. 2001). In that case, the complaint did not allege exhaustion specifically. Here, Emerson has pled that "[he] has exhausted his administrative remedies under the Plan for the cancellation of medical benefits" and "[he] has exhausted all administrative remedies required to be exhausted." SAC ¶ 112, 117.

6

have met The Plan's administrative because his inquiries were directed to BofA, rather than to Aetna. However, it was BofA that informed Emerson that his insurance had been cancelled. Emerson had not received notice of cancellation until he spoke with the Personnel Center. Emerson's checks were payable to BofA. SAC Ex. A, C, E. In this instance, the information Emerson obtained from the Personnel Center supplemented The Plan rather than contradicted it.

The Plan defines a claims administrator as "[a] third-party administrator or Insurer designated by the Company to review claims for benefits under a Component Plan." Defs Req. for Judicial Notice Ex. A at 3. At oral argument, Defendants repeatedly emphasized the fact that The Plan identifies Aetna as the claims administrator. However, while Exhibit A to The Plan lists the claims administrator as "Aetna [and] Caremark," Footnote Two to The Plan reveals that "[f]or all Component Plans, the Bank of America Pay and Benefits Escalation Team is the Claims Administrator with respect to Eligibility and Enrollment Claims, unless such a claim is being handled by the applicable third party administrator." *Id.* at A-1.

Under ERISA, a plan "shall be written in a manner calculated to be understood by the average plan participant." 29 U.S.C. § 1022(a). The terms of a plan "should be interpreted in an ordinary and popular sense as would a [person] of average intelligence and experience." *Vaught v. Scottsdale Healthcare Corp. Health Plan*, 546 F.3d 620, 628 (9th Cir. 2008)(citing *Gilliam v. Nev. Power Co.*, 488 F.3d 1189, 1194 (9th Cir. 2007). Here, a reasonable person would not necessarily have looked to Aetna as the claims administrator in light of the statement in Footnote Two. Indeed, a reasonable person easily could have believed that *BofA* was the claims administrator for eligibility and enrollment. *See id.* Moreover, because BofA operates the Personnel Center,[3] it was reasonable for Emerson to rely on the information he received from the

---

[3] At oral argument, Defendants represented that the Personnel Center is not a unit of BofA. However, Footnote One to Exhibit A of The Plan states that "[f]or all Component Plans, the Bank of America Associate Handbook, as in effect from time to time and including any addendum or other supplement, is an Incorporated Document." Defs Req. for Judicial Notice Ex. A at A-1. The Bank of America Associate Handbook lays out several scenarios that terminate coverage. *See* Defs Req. for Judicial Notice Ex. B at 10. In particular, the Handbook explains that

7

telephone representatives with whom he spoke. The Bank of America Associate Handbook directs beneficiaries to *contact the Personnel Center* "with any questions regarding when your coverage will end for a specific benefit(s)." Defs Req. for Judicial Notice Ex. B at 10. Emerson followed the representative's instructions and sent the March and April letters to the Pay and Benefits Escalation Team, which The Plan lists as "the Claims Administrator with respect to Eligibility and Enrollment Claims." Defs Req. for Judicial Notice Ex. A at A-1.

Defendants also asserted at oral argument that reasonable reliance terminated when Emerson received final notice that his benefits had been cancelled. Emerson pointed out that he never received an official termination document. According to the complaint and matters that may be judicially noticed, the only final document Emerson received from Defendants was the Certificate of Group Health Plan Coverage, which did not explain why his benefits were cancelled.

Emerson also argues that The Plan's appeal process applies only to denied claims. Since he never received a "denial notification," the procedure for appeal never was triggered. Emerson's request for the second surgery never was denied; rather, his insurance was cancelled. At this stage the Court need not construe the meaning of the "Appeal of Denied Claim" clause, as Emerson has pled sufficient facts to allege that he exhausted all applicable administrative procedures.

**B.    Exception to Exhaustion Requirement**

Even if Emerson had failed to exhaust his administrative remedies, the Ninth Circuit has recognized that there are circumstances in which relief from the exhaustion requirement is

---

> [y]our coverage will also end if you do not pay the required associate contributions toward the cost of health care coverage for 30 days. If this occurs, your coverage will be canceled retroactively as of the end of the last period for which you had paid for coverage. Health plans may require you to repay any claims paid by the plan after this time. *Contact the Personnel Center... with any questions regarding when your coverage will end for a specific benefit(s)*.

*Id.*

8

Case No. CV 10-04919 JF
ORDER DENYING MOTION TO DISMISS SECOND AMENDED COMPLAINT AS TO DEFENDANTS AETNA LIFE INSURANCE COMPANY AND BANK OF AMERICA GROUP BENEFITS PROGRAM
(JFEX2)

appropriate. *Amato*, 618 F.2d at 568. Exhaustion is not required when a plan's internal procedure does not comply with regulatory requirements. *Id.* Here, because they never provided Emerson with a formal written notice of cancellation, Defendants failed to comply with Section 2560.503-1(g). A claims review process is insufficient when the beneficiary is not advised of the additional information needed to perfect the claim and when the plan does not explain the review process. *Sage v. Automation, Inc. Pension Plan*, 845 F.2d 885, 894 (10th Cir. 1988). Aetna made no effort to inform Emerson of his rights. Instead, at least according to the SAC, Emerson himself had to make several telephone calls to the Personnel Center to learn that his insurance had been cancelled and that he could request reinstatement.

When a plan's procedures for review are not followed by the administrator, a claimant does not need to go through the formalities of an appeal process. *Hall v. Nat. Gypsum Co.*, 105 F.3d 225, 232 (5th Cir. 1997). A claimant's failure to make a required written request does not excuse a plan administrator from failing to comply with the plan's own internal procedures. *Berger v. Edgewater Steel Co.*, 911 F.2d 911, 917 (3rd Cir. 1990), *cert. denied*, 499 U.S. 920 (1991). Here, The Plan provides that, "[t]he Claimant will be notified in writing if any part of a claim for benefits under a Component Plan providing group health benefits is denied."[4] Defs.

---

[4]The Plan further provides that
[t]his notice will include: (A) the reason for the denial; (B) specific references to pertinent plan provisions on which that denial was based; (C) a description of any additional information or materials necessary to process the claim properly and the reasons why the materials are needed; (D) an explanation of the claims review process and the time limits applicable to such process, including a statement of the Claimant's right to bring a civil action under Section 502(a) of ERISA following an adverse benefits determination on review; (E) a statement that a copy of any internal rule, guideline, protocol or other similar criteria relied upon in making the adverse determination is available free of charge upon request; (F) a statement that if denial of the claim is based on medical necessity or experimental treatment, or a similar exclusion or limitation, the Claims Administrator will, upon request, provide the Claimant, free of charge, an explanation of the scientific or clinical judgment, applying the terms of the plan to the Claimant's medical circumstances; and (G) in the case of a denial concerning a claim involving urgent care, a description of the expedited review process applicable to such claims.
Defs. Req. for Judicial Notice Ex. A at 38.

9

Case No. CV 10-04919 JF
ORDER DENYING MOTION TO DISMISS SECOND AMENDED COMPLAINT AS TO DEFENDANTS AETNA LIFE INSURANCE COMPANY AND BANK OF AMERICA GROUP BENEFITS PROGRAM
(JFEX2)

Req. for Judicial Notice Ex. A at 38.  Emerson alleges that Defendants never sent him a written notice that explained why his benefits were cancelled.  SAC ¶ 37.  Under these circumstances, Emerson's failure to follow The Plan's formal appeal procedure does not excuse Defendants' own failure to comply with The Plan.

## IV.  ORDER

Good cause therefor appearing, the motion to dismiss is DENIED.  Defendants shall file their answer withing twenty (20) days of the date of this order.

IT IS SO ORDERED.

DATE:  8/26/2011

JEREMY FOGEL
United States District Judge

10

Case No. CV 10-04919 JF
ORDER DENYING MOTION TO DISMISS SECOND AMENDED COMPLAINT AS TO DEFENDANTS AETNA LIFE INSURANCE COMPANY AND BANK OF AMERICA GROUP BENEFITS PROGRAM
(JFEX2)